## TOMPKINS *versus* SMITH.

1. Where A employed B and C, to perform certain services, under a special contract; and the latter engaged D, to discharge part of the work—held, that a verbal promise, by A, (at the request of B and C,) to pay D the amount owing to him from B and C, was was within the statute of frauds: and that an action by D, on the promise, was not sustainable.

In error from Montgomery Circuit court. This action was instituted on a verbal promise by the plaintiff in error to pay an amount due by Shaw & Black, to Smith, the defendant here.

Shaw & Black entered into a special contract to build a house for Tompkins, in which agreement, the former stipulated to find the proper assistants to complete the work. The plaintiff, Smith, having been employed by Shaw & Black, and he having performed a part of the services, it was requested by Shaw & Black, that Tompkins should pay to Smith

the amount due to him by his employers.   Tompkins promises to do this—and in part, payed Smith twenty dollars.   On this state of facts, the question was raised whether or not the promise was within the statute of frauds : and the Circuit court having ruled it not, the defendant, with his surety, Whitman, prosecuted error, in this court.

*Vandergraaff*, for plaintiff—*Goldthwaite, contra.*

LIPSCOMB, C. J.—This cause was commenced before a justice of the peace.   It appears from the record, that, before the commencement of this suit, Tompkins had made a contract with Shaw & Black, whereby they agreed to build a house for Tompkins, in the town of Montgomery, of a particular description, for which they were to receive a specific sum of money.   By an express stipulation they were to employ, at their own expense, the necessary hands and workmen, for the completion of the building.— That they had, without the knowledge of Tompkins, employed Smith, the plaintiff in the court below, to work upon the building ; and by their contract with him, he was to look to them, and not to Tompkins, for his wages.   After Smith had worked on the house some time, Black, one of the undertakers, went to Tompkins, and requested him to agree to pay Smith the amount that Shaw & Black owed him for his work.   Tompkins promised to do so, and paid Smith twenty dollars.   The suit was brought by Smith, to recover the balance of the debt on this promise.— The justice of the peace gave the plaintiff a judgment, from which Tompkins appealed, with Whitman as his security.

On the trial, in the Circuit court, a recovery was resisted on the ground, that there was not sufficient proof of the promise, and that it was not supported by a sufficient consideration; and was void because it was not in writing.

The objections were not sustained by the court; and the court charged the jury, that the promise was not within the statute of frauds. These opinions of the court below, are now assigned for error.

The promise relied on in support of the action, was proven by the testimony of Black, one of the undertakers to build the house for Tompkins: his testimony is set out in the bill of exceptions, to the opinion of the judge who tried the cause, in the court below. We will transcribe so much of it as relates to the promise :—

" That after the said Smith had labored for some time, for the said Shaw & Black, on the building of the said Tompkins, he, the witness, verbally requested Tompkins to pay Smith the amount that Shaw and Black stood indebted to him, being —— dollars; that Tompkins promised to do so, verbally, and not in writing : that at the time of making said verbal promise, the said Tompkins paid to Smith twenty dollars, being a part of the account of the said Smith, so assumed by the said Tompkins :— that at the time of making the promise by the said Tompkins, it was understood that the amount so paid by the said Tompkins to the said Smith, *should, when paid,* be charged to the said Shaw & Black ; and be allowed as a credit on a settlement with the said Shaw & Black, for the said building; but that the said Shaw & Black had never given the said Tompkins any receipt for the said amount."

This is all the testimony in support of the promise to Smith.   The objections taken by the counsel for the plaintiff in error, are, first, that the promise was made to Black, and not to Smith, the plaintiff in the action below ; and, second, that it was for the debt of Shaw & Black.

The transaction, and the whole conversation on the subject, seems to have been between Black and Tompkins, and there does not appear to have been any privity between Smith and Tompkins; and, but for the payment of the twenty dollars, it could not have been inferred that he was present at the conversation, or knew any thing about it.   He appears, however, to have been wholly passive.

There are cases where the promise made to one, may be the foundation of an assumpsit to another; in such cases the law, from the circumstances, raising an implied promise.   Such would be the case, if A should request B to procure work to be done for him by C, and promised B that C should be paid for it.   If the work was done by C, the promise would be considered, in legal effect, as having been made to C; and he could sue on it, as a promise made to himself.   But where an implied promise is raised, it is always on the ground that a benefit, or a valuable consideration, has been received by the person against whom the implication of the promise is raised.   In this case, the promise was made to Black, when there was nothing to be gained or lost by the party making the promise, and from aught that appears in the testimony, Black was the person seeking the aid and assistance of Tompkins, and for his own benefit, to relieve himself from the importunity of his creditor, Smith.   He alone could reproach Tompkins with

having violated his promise, because it was made to him. Tompkins might well say to Smith, I made no promise to you; it is true, I did promise Black to pay you, for him, and if I am answerable to any person for a breach of that promise, it is to him, and not to you. This seems to be a fair construction of the testimony.

But, let us examine the case as though the promise had been made to Smith himself, and see whether it is such an one as is good in law, and can support the action. It is objected that it is a promise to pay the debt of another, and void under our statute, because it is not in writing.

The first section of the act of 1803, to prevent
*Dig. 224 frauds and perjuries,* so far as it relates to verbal promises to pay the debt of another, is copied from the second clause of the fourth section of the statute of 29th Charles II. We may, therefore, with propriety, resort to the construction given to the English statute, as strictly applicable to our own. The cases arising under this branch of the statute, have most generally turned upon the question, whether the promise was collateral; or the direct and original undertaking of the promissor to the promisee. If the consideration was beneficial to the one promising, or injurious to the promissee, in most cases, the promise would be held to be an original one, and not within the statute. In such cases there would be, between the parties, both a privity of contract and consideration, concurring in point of time; and the consideration would be the distinct element of the contract, essential to its validity. *Roberts*, in treating on this particular branch of the statute of frauds, says: "If, therefore, the promise is founded on a fresh, distinct consideration, moving to the par-

TOMPKINS *vs.* SMITH.

ty promising, it seems a perfectly established doctrine upon all the cases, that the statute will not extend to it." And as a case, the most illustrative of his text, he refers to *Williams* vs. *Leper*, reported in 3 Burrow, 1886, which is as follows: Taylor, a tenant of the plaintiff being in arrear for rent to the amount of forty five pounds, for three quarters of a year, conveyed all his effects for the benefit of his creditors. They employed Leper, the defendant, as a broker, to sell the effects, who accordingly advertised a sale; on the morning advertised for the sale, Williams, the landlord, came to distrain the goods in the house; Leper having notice of the plaintiff's intention to distrain, promised to pay the arrear of rent *if he would desist from distraining,* and Williams, on the faith of this promise, desisted accordingly. A verdict was rendered for the plaintiff, and the question being reserved, it was held that this case was not within the statute. The reasoning of the judges shows, most conclusively, that it was not, on the mere ground of the promise being direct, or that the plaintiff had given up his right to distrain, but from the peculiar character of the consideration. They held that it was a promise, in effect, to pay, out of a particular fund in the hands of Leper; and Lord *Mansfield* is explicit that the *res gestæ* would entitle the plaintiff to his action, (as I understand him,) independent of the promise. He says the plaintiff had a lien on the goods; Leper was a trustee for all creditors, and was obliged to pay the landlord, who had a prior lien. Mr. Justice *Aston,* said he looked upon the goods as the debtor, and that Leper was not bound to pay to the landlord more than the goods sold for—the goods were a fund between both, and on that foot he con-

curred. The principle of this decision will be more fully illustrated, by contrasting it with one where the contract was held by the whole court to be within *²Wils. 94* the statute.

In the case of *Fish* vs. *Hutchinson*,[a] the facts were simply these—Vickers was indebted to Fish in a sum of money, and Fish had commenced an action for it; whereupon the defendant promised, that, in consideration the plaintiff would stay his action against Vickers, he would pay the money which was owing. Here there was a debt subsisting at the time of the promise, so that the liability of him on whose behalf it was made, was the moving consideration to the promissor. The liability of the party was so immediately the ground of the promise, that the action could not have been sustained against the promissor without showing such liability to have been in existence when the promise was made. In *Williams* vs. *Leper*, it was the promissors own liability, which was the immediate ground of the promise, and, however that liability might be shown to have originated in in the tenant's liability, primarily to pay the rent, yet, the promise being immediately moved by the defendant's own liability, by reason of his having pos- *ᵇRobts 223* session of the goods, whereon the plaintiff's lien had attached, might, in that respect be said to be original.[b]

In the case under consideration, there is no evidence that Tompkins was to receive any benefit from the promise, nor is there any circumstance to show that the promise grew out of any immediate and new consideration, to make it an original undertaking.— The testimony does not show that it was supported by any consideration, that would have been good in law. It does not show that Smith had been placed,

by the terms of the promise, in a different situation as to his legal remedy against Shaw & Black, than he was in before. It is true that Black proves a receipt in full to Shaw & Black, from Smith, the day the promise was made, but unless it had been agreed between Tompkins and Smith, that he should discharge Shaw & Black as the ground and consideration of the promise by Tompkins to pay their debt, his giving them the receipt could give no additional validity to Tompkins' promise; to have made the discharge, it must have been made and understood between the promissor and promissee, as the consideration, and an element of their agreement. The testimony of Black repudiates any presumption that might be shown in favor of the discharge being the moving cause and immediate ground of the promise; his testimony is conclusive, that he did not consider himself and his partner, Shaw, discharged by the promise, but that they would be, on Tomkins' making payment. He says that it was agreed and understood, that the amount *so to be paid* by Tompkins, *should, when paid*, be charged to himself and Shaw; but that they had not receipted for the same. The inference, then, is, that the promise was not intended to discharge Shaw and Black, the original debtors; but, if any was made, that it was collateral.

We are, therefore, of opinion, that a sufficient, new and distinct consideration, moving to the promise, has not been proven, to make it an original promise, not within the statute: and, that the judgment must be reversed.

If, in this case, it had been proven, that the discharge of Shaw and Black, was stipulated between the promisor and the promisee, I should, on princi-

ple, be disposed, still to consider it as within the statute, and void—I should call it the promise to pay the debt of another, within the meaning of the act.

Mr. *Roberts*, in his excellent book on the statute of frauds, (p. 224,) says, "If I undertake to satisfy the debt of a person, already indebted, in consideration of his instantaneous release, there seems to be no good reason, for saying, that this is not a promise to answer for the debt of another, within the reason and contemplation of the act of parliament."

This distinction has, however, been taken in modern cases. I cannot, hower, perceive its soundness, and it is, in my opinion, to be traced to a mere doubt, expressed in its favor, in the case of *Anstey* vs. *Marden*,[a] by the Lord Chief Justice, before whom it was tried; but the case did not turn upon that point. I will, however admit, that what was a mere speculative suggestion of the Chief Justice, in that case, has been admitted, by subsequent Judges, to be a sound distinction. I have not, however, found a single case, reported, where the question was directly adjudicated: it is frequently referred to by way of illustrating a case not coming within the statute, and seems to be recognised by that distinguished jurist, Chief Justice, *Kent*, in *Leonard* vs. *Vredenburg*,[b] and in the third volume of his *Commentaries.*

[a] New Rep 124.

[b] 8 John 38

If the question should ever be directly presented, and I should not find that the rule has been too stubbornly settled, by adjudicated cases, I shall feel disposed to reject the distinction, in principle. I think there is no difference between a promise, on consideration of giving day to the original debtor, and his discharge—they both relate to his indebtedness.

SAFFOLD, J. not sitting.